### In re BRAND MANAGEMENT GROUP, INC., Debtor.

### James L. DAVIS and Harold K. Terry, Movants,

### v.

### BRAND MANAGEMENT GROUP, INC., Respondent.

### Bankruptcy No. A96–78609–JB.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 31, 1997.

Jeffery L. Hersh, Mitchell & Hersh, Atlanta, GA, for debtor/respondent.

Richard J. Joseph, Stokes, Lazarus & Carmichael, Atlanta, GA, for movants.

Stephen H. Block, Levine & Block, Atlanta, GA, for Trustee Morton P. Levine.

Gregory E. Keller, Silverman, Harnes & Harnes, New York City, Craig G. Harley, Appel, Chitwood & Harley, Atlanta, GA, for Mitchell Partners, L.P.; James Mitchell; general partners of Mitchell Partners, L.P.; and Peggy Wilson, Trustee of the James M. Wilson trust.

J. Ed Segraves, Zachary & Segraves, Decatur, GA, for the Risbergs.

Jerry L. Sims, Sims, Moss, Kline & Davis, Atlanta, GA, for Best & Wicker, Inc.

Frank W. Scroggins, Scroggins & Williamson, Atlanta, GA, for General Builders and Chapel Hill, Inc.

## CONTESTED MATTER

JOYCE BIHARY, Bankruptcy Judge.

### *ORDER*

This matter is before the Court on a motion for relief from the automatic stay filed by James L. Davis and Harold K. Terry ("movants"). Movants seek relief under 11 U.S.C. § 362(d) to continue certain litigation pending against the debtor Brand Management Group, Inc. ("debtor" or "Brand") in Florida and to obtain possession of debtor's interest in the stock of General Builders Corporation ("General Builders"), which is also in bankruptcy. The motion for relief is strongly opposed on a number of grounds by (1) the debtor, (2) the Chapter 11 trustee of General Builders, (3) Mitchell Partners, LP; James Mitchell; the general partners of Mitchell Partners, LP; and Peggy Wilson, trustee of the James M. Wilson trust (hereinafter collectively "Mitchell Partners"), (4) the Risbergs, and (5) Best & Wicker, Inc. ("Best & Wicker"), the current stockholder of the debtor Brand.

At a pretrial conference on the contested motion for relief from the automatic stay held on September 11, 1997, counsel identified a threshold issue as follows:

Do the documents submitted (and any to be submitted) by movants Terry and Davis, on their face and without consideration of the validity of the overall transaction in connection with which they were created, create a perfected security interest in the stock at issue?

Counsel agreed that this issue could be decided on briefs and that no evidentiary hearing would be necessary. Briefs have now been filed by the debtor, the movants, Mitchell Partners, Best & Wicker, and Morton Levine, the Chapter 11 trustee of General Builders. After carefully considering the briefs submitted on this issue, the Court

concludes that the documents do not establish or create a valid security interest in favor of movants in Brand's General Builders stock to secure payment of the movants' loan to the debtor in the event of default.

It is useful to set forth some brief background facts in order to put this motion in context. The documents at issue are part of a larger transaction which is the subject of litigation pending in the United States District Court for the Northern District of Georgia. Mitchell Partners are the plaintiffs in a civil case pending before the Honorable Marvin Shoob, *Mitchell Partners et al. v. Janis Risbergs and General Builders Corporation et al.,* Civil Action No. 1:96–cv–0735–MHS. Mitchell Partners are the minority shareholders in General Builders, a publicly held company.

In March of 1995, the Risbergs had a controlling interest in General Builders. Russell Reed used Brand as a vehicle to purchase the Risbergs' stock in General Builders. Brand, owned by Russell Reed at the time, borrowed $1.47 million from the movants to finance the purchase of the stock of General Builders. Davis and Terry in turn borrowed these funds from Admiralty Bank in Florida. Funds of General Builders went to an alleged consultant, then to movants Davis and Terry, and then to Admiralty Bank to reduce the debt. In the civil action, Mitchell Partners argues that the debtor and the movants orchestrated a fraudulent scheme through which over $1 million was stolen from General Builders and used to pay for the Risbergs' stock.

Davis and Terry sued Brand in the state courts in Florida to obtain a judgment. Then Brand filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 22, 1996, which case was assigned to the Honorable A.D. Kahn. On March 3, 1997, involuntary Chapter 7 petitions were filed against General Builders, Case No. A97–64025–JB, and against a related debtor, Chapel Hill, Inc., Case No. A97–64021–JB. General Builders owns all the stock of Chapel Hill, Inc. Brand Management in turn owns 60% of the stock of General Builders. After the General Builders and Chapel Hill, Inc. cases were filed and assigned to the under-signed on March 3, 1997, Mitchell Partners filed a motion on May 7, 1997, requesting that the Brand case be transferred to the undersigned. This motion to transfer was granted by Order entered May 9, 1997. On May 29, 1997, both General Builders and Chapel Hill, Inc. voluntarily converted their Chapter 7 involuntary cases to Chapter 11 cases pursuant to § 706(a) of the Bankruptcy Code. On June 6, 1997, the Court granted a motion by Mitchell Partners to jointly administer General Builders and Chapel Hill, Inc. When General Builders and Chapel Hill, Inc. failed to close a loan which was the subject of a Consent Order entered July 28, 1997, the Court granted the request by the petitioning creditors for the appointment of a Chapter 11 trustee.

Davis and Terry now seek relief from the automatic stay to continue their litigation in Florida to obtain a judgment against Brand and to try to obtain possession of Brand's stock in General Builders, which stock was placed in escrow at the time of the March 1995 transaction. Movants argue that they have a claim of some $1.9 million against the debtor, secured by this stock. The parties opposing Davis and Terry's motion for relief from the stay argue, among other things, that the note to Davis and Terry was not secured by any General Builders stock; that Davis and Terry only put some $360,000.00 at risk, not $1.47 million, since most of the money was repaid instantly by General Builders' paying down the loan from Admiralty Bank; and that the loan was usurious and is unenforceable. While the parties have raised many issues attacking various aspects of this transaction, the limited issue currently before this Court is whether, in the documents presented, the debtor Brand granted Davis and Terry a security interest in the General Builders stock which Brand acquired from the Risbergs.

The documents presented by the movants are as follows:

1. A promissory note dated March 23, 1995, from Brand to Davis and Terry in the principal amount of $1,470,000.00;

2. A promissory note dated March 27, 1995, from Brand to Janis Risbergs for

$500,000.00, with language that the payment is guaranteed by Davis and Terry;

3. A letter dated March 23, 1995, from Brand, signed by Russell Reed as president of Brand, to Davis and Terry;

4. A letter dated March 24, 1995, from Michael E. Hill, attorney for Brand, addressed to Phillip Brawner, attorney for Davis and Terry.

5. A letter dated May 19, 1995 from George F. Allen, attorney for Brand, to Phillip Brawner; and

6. A copy of Brand's General Builders stock certificate for 742,566 shares.

Davis and Terry argue that the $1.47 million promissory note references collateral. However, the collateral referenced in the promissory note does not include any General Builders stock. The promissory note by its terms is only secured by "that certain Assignment (the 'Assignment') of even date herewith from the Winston Advisors, Ltd., Inc., a Florida corporation ('Winston') to the Lender, and is also guaranteed (the 'Guaranty') by Winston and by Russell Reed ('Reed')." *See* ¶ 1 of the March 23, 1995 promissory note. Nowhere in the note does it provide that the loan is secured by Brand's General Builders stock. Furthermore, in the provisions of the note relating to events of default, there is no mention of any right by Davis and Terry to foreclose upon or take possession of Brand's General Builders stock. Thus, nothing in the promissory note evidences an intent or agreement by Brand to pledge the General Builders stock to secure the loan by Davis and Terry. Mitchell Partners also submitted a copy of the Assignment referred to in the promissory note. This document entitled "Assignment" is dated March 24, 1995, and contains an assignment by Winston, to Davis and Terry of all Winston's rights under a consulting agreement between Winston and General Builders. There is no mention in this document of any pledge by Brand to Davis and Terry of Brand's stock in General Builders.

Movants Davis and Terry argue that the letter of March 23, 1995, from Russell Reed to Davis and Terry is in effect a "loan agreement/or security agreement." The pertinent language in this letter is as follows:

1. BMG [Brand] has agreed in other documents executed and delivered on or about the date hereof, that "for so long as the Purchase Money Note of BMG to Sellers is outstanding, and guaranteed by Lenders in whole or in part, BMG will not transfer any of the Shares to any party, nor pledge or encumber the Shares in any manner, without Lenders' written consent. Any transfer, pledge, encumbrance or other creation of any interest of any kind in the Shares in violation of this covenant shall constitute a default under the BMG Note entitling Lenders to exercise all rights and remedies provided for therein."

2. As additional security to you, BMG agrees to deliver the original certificates evidencing the Shares to the law firm of Taylor Brion Buker & Greene, as Escrow Agent, to be held in escrow until the Loan has been repaid in full and you have been released from your guaranty to Admiralty Bank, which you have given on or about the date hereof in connection with this transaction.

3. You acknowledge that the new Share certificates will be prepared by Mellon Securities in New York as transfer agent, and will not be available in physical form until several business days after closing. We will and hereby do instruct the transfer agent to deliver said certificates to the Escrow Agent pursuant to this letter.

Contrary to movants' argument, this letter does not create a security interest in Brand's General Builders stock in favor of Davis and Terry. The letter confirms a promise by Brand not to transfer its General Builders stock or to encumber it in any way, but it does not mention pledging the stock to Davis and Terry to secure the loan. The reference in the letter to placing the stock with an "escrow agent" until the loan is repaid is to provide the assurance to Davis and Terry that Brand will not convey or encumber the stock. This letter does not refer to any remedy in the event of default and does not give Davis and Terry any right to obtain possession of the stock under any circumstances, including the circumstances of a default.

Movants also argue that the placement of the stock in escrow described in the March 24, 1995 letter evidences an intent to create a security interest. The letter is written by Brand's attorney and states that he will retain possession of the stock certificate until he has received confirmation that Terry and Davis' obligations to Admiralty Bank and the Risbergs have been paid in full. The letter contains no mention of a pledge, a security interest, or any rights of Davis and Terry to ever foreclose on the stock. Once again, the placement of the stock in escrow was to provide assurance to Davis and Terry that Brand would not transfer or encumber the stock. In fact, the lawyer holding the stock in escrow is the lawyer for Brand, not the lawyer for Davis and Terry.

Respondents have submitted additional documents which show that the parties' agreement in the March 23, 1995 letter from Brand to Davis and Terry regarding the placement of the General Builders stock in escrow was only to insure that Brand could not transfer or pledge the stock, not to collateralize the loan from Davis and Terry. Best & Wicker and Mitchell Partners each submitted another document with their responses, a March 16, 1995 letter signed by Russell Reed as president of Brand addressed to Davis and Terry, stating that it confirms the parties' agreement for the terms and conditions of Davis and Terry's loan to Brand. The versions of this letter submitted are not identical. The one submitted by Best & Wicker and referred to in Best & Wicker's brief as the "Loan Agreement" is only signed by Reed and contains the following two pertinent paragraphs.

7. *SECURITY.* The Loan shall be evidenced by BMG's promissory note in the amount thereof, and reflecting the payment terms set forth above. Said note(s) (the "BMG Note") shall be guaranteed by Russell Reed ("Reed") and Winston Advisors, Ltd., Inc. ("Winston"), a Florida corporation, which guaranty is herein referred to as the "Reed/Winston Guaranty". Reed and Winston shall also indemnify and hold harmless Lender from and against any loss or liability incurred by Lender under the Lender Guaranty, pursuant to an indemnification agreement (the "Indemnification") to be executed and delivered at closing.

The Lender Guaranty and the Indemnification shall be secured by a certain collateral assignment from Winston referred to in a separate letter to you from Winston.

8. *RESTRICTION ON TRANSFER OF SHARES.* BMG agrees that for so long as the Purchase Money Note of BMG to Sellers is outstanding, and guaranteed by Lenders in whole or in part, BMG will not transfer any of the Shares to any party, nor pledge or encumber the Shares in any manner, without Lenders' written consent. Any transfer, pledge, encumbrance or other creation of any interest of any kind in the Shares in violation of this covenant shall constitute a default under the BMG Note entitling Lenders to exercise all rights and remedies provided for therein.

The version submitted by Mitchell Partners is signed by Reed and Terry and has a shorter paragraph 7 which reads as follows:

7. *SECURITY.* The loans shall be evidenced by BMG's promissory note(s) in the amount(s) of the loans, and reflecting the payment terms set forth above. Said note(s) (the "BMG Note") shall be guaranteed by Russell Reed and Winston Advisors, Ltd., Inc., and secured by a certain collateral as-signment [*sic*] referred to in a separate letter to you.

Neither version of ¶ 7 mentions any pledge of General Builders stock to secure the promissory note, and ¶ 8 (which is identical in the two letters) only restricts Brand from transferring or pledging the stock without Davis and Terry's consent.

The parties' briefs do not contain much analysis of or argument relating to the provisions of the Uniform Commercial Code that govern the creation, attachment, and perfection of security interests in investment securities.[1] In order to apply the law to the

---

1. The parties have argued variously that Georgia or Florida law is controlling. However, as there are no material variations in any of these enactments of the U.C.C. from the official text as it appears in the Uniform Laws Annotated, the

facts, it is helpful to have some understanding of the relevant law. The provisions pertinent to the problem in this case are U.C.C. §§ 8–313(1)(a); 8–321(1), (3); and 9–203(1) and (2).

Section 9–203 of the U.C.C., entitled "Attachment and Enforceability of Security Interest; Proceeds; Formal Requisites," provides in pertinent part:

(1) Subject to the provisions of ... Section 8–321 on security interests in securities ..., a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...;

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

U.C.C. § 9–203 (1977).

Section 8–321 of the U.C.C. in turn provides, in pertinent part:

(1) A security interest in a security is enforceable and can attach only if it is transferred to the secured party or a person designated by him pursuant to a provision of Section 8–313(1).

...

(3) A security interest in a security is subject to the provisions of Article 9, but:

(a) no filing is required to perfect the security interest; and

(b) no written security agreement signed by the debtor is necessary to make the security interest enforceable, except as provided in para-

graph (h), (i), or (j) of Section 8–313(1).

U.C.C. § 8–321 (1977)

Since U.C.C. § 8–321(1) makes the enforceability and attachment of a security interest dependent on a transfer pursuant to a provision of U.C.C. § 8–313(1), we need to look at U.C.C. § 8–313(1). This provision lists ten separate methods of transferring an investment security, including a limited interest such as a security interest. The only method which appears to be implicated by movants' argument is in subsection (a) of U.C.C. § 8–313(1), which provides as follows:

(1) Transfer of a security or a limited interest (including a security interest) therein to a purchaser occurs only:

(a) at the time he or a person designated by him acquires possession of a certificated security

U.C.C. § 8–313 (1977).

■ The General Builders stock is a "certificated security" as that term is defined in U.C.C. § 8–102(1)(a). Movants argue that debtor's placing the General Builders stock certificate "in escrow" with debtor's counsel amounts to a transfer under § 8–313(1)(a). The respondents disagree. A transfer under U.C.C. § 8–313(1)(a) requires "possession" by the secured party or by a person designated by him. While the drafters of the U.C.C. chose not to define the term "possession," § 8–313(1)(a) of the U.C.C. was enacted as an analogue of U.C.C. § 9–305. Both the Comments to § 9–305 and the case law make it clear that neither the debtor nor a person controlled by the debtor can qualify as an agent for the secured party for purposes of possession. *See* U.C.C. § 9–305, cmt. 2; 4 James J. White and Robert S. Summers, Uniform Commercial Code § 31–12, 156 (4th ed.1995). Thus, when debtor had its own lawyer hold the stock, it did not amount to a "transfer" to Davis and Terry under § 8–313(1)(a).

■ Finally, even if the Court found that a transfer under § 8–313(1)(a) took place when debtor had its lawyer hold the General Builders stock certificate, the key element necessary to support a finding that a security

standard text and citation form for the U.C.C. will be used throughout this Opinion.

interest has been created is missing, namely, a security agreement. Even though § 8–321(3) makes it clear that a written security agreement is not necessary to make a security interest in a security enforceable, a security interest in a security is still "subject to the provisions of Article 9," which include the requirements under § 9–203 of an agreement to create a security interest. As discussed above, the evidence presented by movants does not show any intent by the parties to create a security interest in favor of Davis and Terry in debtor's General Builders stock. To the contrary, the documents show that the only item intended by the parties to secure the note was the Assignment by Winston of its rights under a consulting agreement.

In accordance with the Court's conclusion that the movants do not have a security interest in the debtor's General Builders stock, Davis and Terry's motion for relief from the stay to foreclose on the stock is hereby DENIED.